UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-cv-00251-FDW

| | |
|---|---|
| ALTHIA G. MCLAUGHLIN, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff Althia McLaughlin's Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 7, 8), and Defendant Commissioner of Social Security's Motion for Summary Judgment and Reply Brief, (Doc. No. 9). This matter has been fully briefed, (Doc. Nos. 7–9), and is ripe for ruling. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability insurance benefits ("DIB") and supplemental security income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**, the Commissioner's Motion for Summary Judgment is **GRANTED**, and the Administrative Law Judge's ("ALJ") decision is **AFFIRMED**.

## I. BACKGROUND

On December 22, 2020, Plaintiff filed an application for DIB and on January 25, 2021, Plaintiff filed an application for SSI, alleging disability since January 4, 2020. (Tr. 189–204.) Plaintiff's claim was initially denied on June 22, 2021. (Tr. 95, 100.) Plaintiff's claim was again denied at the reconsideration level on September 1, 2021. (Tr. 107, 112.) On November 16, 2021,

1

Plaintiff requested a hearing before an ALJ. (Tr. 114.) A hearing was held before ALJ Theresa R. Jenkins (the "ALJ") in Charlotte, North Carolina, on July 21, 2022. (Tr. 29–63.)

At the ALJ hearing, Plaintiff testified she works "very minimally[,]" about two to three hours a week as a counselor. (Tr. 34.) According to Plaintiff, she is not working full-time because her thyroid disease make it difficult for her to focus and articulate words, and her thyroid eye disease makes it hard for her to do paperwork. (Tr. 37–38.) Plaintiff also testified her thyroid disease causes anxiety, which makes it difficult for her to work with a large number of clients, and her depression makes it difficult to hear other people's problems. (Tr. 38.) Additionally, when she was working full-time, she felt "super weak and tired at the end of a long day." (Tr. 38.)

On October 24, 2022, the ALJ issued an unfavorable decision, finding Plaintiff was not under a disability within the meaning of the Social Security Act. (Tr. 24.) Applying the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law: first, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 4, 2020. (Tr. 16.) At step two, the ALJ found Plaintiff had the following severe impairments: cardiomyopathy; cardiomegaly; chronic systolic congestive heart failure; hyperthyroidism; atrial fibrillation; and Graves' disease. (Tr. 17.) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.) Before proceeding to step four, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations: "avoid workplace hazards; is allowed to alternate between sitting and standing up to two times each hour; is able to sustain attention and concentration for two hours at a time, but no work requiring a production rate or demand pace; is limited to only occasional use of the bilateral

2

lower extremities for pushing, pulling, and operating foot controls; should avoid concentrated exposure to extreme hot or humid environments; and requires one to two additional five minute rest breaks." (Tr. 18.) At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 22.) At step five, the ALJ determined "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform[:]" (1) a merchandise marker, (2) a mail sorter, and (3) a routing clerk. (Tr. 23.) The ALJ therefore concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from January 4, 2020, through the date of the decision, October 24, 2022. (Tr. 24.)

The Appeals Council denied Plaintiff's subsequent request for review and, as a result, the ALJ's decision became the final decision of the Commissioner. (Tr. 1.) Plaintiff has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of the Social Security Commissioner's final decision to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). When examining a disability determination, a reviewing court is required to uphold the determination if an ALJ has applied the correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). A reviewing court may not reweigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's

function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 653 (alteration and internal quotation marks omitted) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Kennedy v. Saul, the Fourth Circuit explained the considerations applied before moving to step four:

> In assessing a claimant's RFC, "[t]he ALJ must consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect the claimant's ability to work," offering "a narrative discussion describing how the evidence supports each conclusion." Thomas [v. Berryhill], 916 F.3d [307,] 311 [(2019)] (brackets and internal quotation marks omitted). After "the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." Id. Thus, we have explained that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Id. "The ALJ's logical explanation[] is just as important as the other two" requirements because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." Id.
>
> "[A]n ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." Lewis, 858 F.3d at 865-66; see 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c) (2019). The ALJ first "looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms" and then "evaluate[s] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." Lewis, 858 F.3d at 866. The second step "requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." Id.
>
> The regulations instruct ALJs not to reject a claimant's reports about the intensity and persistence of her symptoms or about how her symptoms affect her ability to work solely because the medical evidence does not substantiate the reports. Id. Instead, when examining the credibility of an individual's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual, and any other relevant evidence." Social Security Rule (SSR) 96-7p, 1996 WL 374186, at *1 (July 2, 1996). An ALJ's assessment of a claimant's credibility regarding the intensity and persistence of her symptoms is entitled to great weight when it is supported by the record. See Hancock [v. Astrue], 667 F.3d

5

[470,] 472 [(2012)]. "Significantly, however, the ALJ must build an accurate and logical bridge from the evidence to his conclusion that the claimant's testimony was not credible." Brown [v. Comm'r Soc. Sec. Admin.], 873 F.3d [251,] 269 [(2017)] (brackets and internal quotation marks omitted).

781 F. App'x 184, 186-87 (4th Cir. 2019).

As aforementioned, at step four, the claimant has the burden to show he or she is unable to perform past work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015). If the claimant meets his burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d at 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). If the Commissioner meets this burden at step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

On appeal, Plaintiff asserts three assignments of error: (1) the ALJ failed to adequately perform a function-by-function analysis of her ocular headaches; (2) the ALJ failed to adequately perform a function-by-function analysis of her insomnia; and (3) the ALJ misstated the evidence regarding her peripheral edema. The Court finds Plaintiff's arguments without merit for the following reasons.

**A. The ALJ adequately performed a function-by-function analysis of Plaintiff's ocular headaches.**

Plaintiff argues the ALJ erred by failing to perform an adequate function-by-function analysis of her ocular headaches. (Doc. No. 8, pp. 6–9.) Specifically, Plaintiff argues "the ALJ

6

barely mentions [her] ocular headaches at all" despite her testifying about this impairment at the ALJ hearing and medical records "corroborat[ing]" the severity of it. (Id., pp. 7–8.) Plaintiff also points to medical records the ALJ did not specifically address in her opinion. (Id., p. 9.) Plaintiff claims since "the ALJ failed to adequately discuss how [Plaintiff's] ocular headaches affected her RFC problems, remand is required." (Id.)

The Commissioner responds and argues the ALJ did consider Plaintiff's testimony about her headaches, citing to the ALJ's acknowledgment that Plaintiff cancels client appointments in her decision. (Doc. No. 9, p. 9.) The Commissioner claims the ALJ also considered medical evidence in the record, which reported Plaintiff experienced headaches "only once every two months" and includes only one other mention of ocular headaches. (Id.) The Commissioner further argues the ALJ's decision is supported by the record: Plaintiff only sought treatment from her ophthalmologist twice, Plaintiff declined steroid treatment from her ophthalmologist, Plaintiff was noncompliant with her prescribed thyroid medication, Plaintiff denied headaches or never mentioned them during appointments with other medical providers, and two State agency physicians did not opine Plaintiff needed limitations related to ocular headaches. (Id., p. 10.)

When assessing an RFC, the ALJ must consider all "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." Thomas, 916 F.3d at 311 (internal quotations omitted). To do this, the ALJ must "provide a narrative discussion describing how the evidence supports each conclusion . . . [then] make a finding as to the claimant's RFC." Id. (internal quotations omitted). In short, the ALJ's decision should contain: 1) evidence, 2) a logical explanation, and 3) a conclusion. Id. Otherwise, "meaningful review is frustrated when an ALJ goes straight from listing

7

evidence to stating a conclusion." Id. Importantly though, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [its] decision." Id. at 312.

Here, the ALJ did discuss and consider Plaintiff's ocular headaches. First, the ALJ discusses Plaintiff's thyroid eye disease, which causes her ocular headaches, at the beginning of her step two analysis. (Tr. 17.) Specifically, the ALJ wrote Plaintiff has thyroid eye disease, but "there is no indication that it significantly limits her ability to perform basic work activities" because "she reported intermittent symptoms[,] [i]n February 2021, she reported feeling pressure behind the eyes only once every two months[,] [and in April 2022, described her thyroid eye disease "as more stable recently." (Tr. 17.) The ALJ next discusses Plaintiff's ocular headaches in her RFC determination. (Tr. 19.) The ALJ notes Plaintiff "feels pressure in her eyes about two to three times per week" and Plaintiff "has to cancel appointments at times due to headaches and symptoms." (Tr. 19.) Notably, the ALJ considered Plaintiff's report "that she watches television and reads for about four hours per day." (Tr. 19.) Finally, the ALJ "provided additional nonexertional limitations to fully account for any intermittent episodes of . . . eye pressure . . . as testified to at the hearing." (Tr. 22.)

The ALJ sufficiently performed a function-by-function analysis of Plaintiff's ocular headaches. The ALJ considered and discussed the evidence in the record and Plaintiff's testimony about this impairment. (Tr. 17, 19.) The ALJ provided a logical explanation for why she found these ocular headaches did not significantly limit Plaintiff's ability to do basic work activities. (Tr. 17.) Also, the ALJ was under no requirement to reference every record of Plaintiff's ocular headaches in her opinion. Importantly, the ALJ did include a limitation in the RFC to account for this impairment, too. (Tr. 22.) It is not the Court's place to reweigh the evidence in the record or make credibility determinations. The ALJ adequately offered a narrative discussion of the evidence

of Plaintiff's ocular headaches and how it supported her decision, and therefore adequately did a function-by-function analysis and did not err.

### B. The ALJ adequately performed a function-by-function analysis of Plaintiff's insomnia.

Plaintiff argues "the ALJ also failed to adequately discuss [her] insomnia." (Doc. No. 8, p. 9–10.) Plaintiff argues she testified about her insomnia during the ALJ hearing and claims there are medical records in support. (Id.) In making this claim, Plaintiff cites to three pages in the record.[1] (Id. at 10.) The first record, which appears to be a disability form Plaintiff filled out, states Plaintiff's illnesses, injuries, or conditions affect her sleep because her "[h]eart failure makes [her] feel like [she's] suffocating when [she] lay[s] down [and b]reathing is very hard." (Tr. 244.) The second record states "[Plaintiff r]eports not sleeping well[.]" (Tr. 343.) Finally, the third record is bloodwork, which does not reference insomnia. (Tr. 454.) Plaintiff argues "[w]e are therefore left to wonder what effects [Plaintiff's] sleep disorder had on her RFC." (Doc. No. 8, p. 10.)

In response, the Commissioner argues Plaintiff "incorrectly implies that the ALJ ignored significant evidence of alleged insomnia[.]" (Doc. No. 9, p. 10.) The Commissioner states Plaintiff "does not even allege that she was diagnosed with insomnia, let alone that the record contains the type of objective medical evidence from an acceptable medical source that is required to establish a medically determinable impairment." (Id.) (citing 20 C.F.R. §§ 404.1521, 416.921).

---

[1] The Court found the following references to insomnia, sleep issues, or tiredness in the record, which Plaintiff did not cite in her brief: insomnia is listed as a side effect of Wellbutrin, which Plaintiff was prescribed for anxiety, (Tr. 266), however the Court notes Plaintiff testified she does not take mental health medication, (Tr. 43); two reports of cardiovascular sleep apnea, (Tr. 324, 526); a report of "[p]ositive for sleep disturbance[,]" (Tr. 354); a report of feeling "weak, tired, bloating, shortness of breath and as if her heart is pounding out of her chest[,]" (Tr. 514); and a report of "feeling a little more tired than usual[,]" (Tr. 517). The Court also found the following records, which Plaintiff similarly did not cite in her brief: two reports of "[n]egative for sleep disturbance[,]" (Tr. 366, 852), and a report stating Plaintiff's "[s]leep habits are good[,]" (Tr. 882).

9

As discussed earlier, when assessing an RFC, the ALJ must consider all "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." Thomas, 916 F.3d at 311 (internal quotations omitted). To do this, the ALJ must "provide a narrative discussion describing how the evidence supports each conclusion . . . [then] make a finding as to the claimant's RFC." Id. (internal quotations omitted). In short, the ALJ's decision should contain: 1) evidence, 2) a logical explanation, and 3) a conclusion. Id.

"[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. [A plaintiff's] statement of symptoms, a diagnosis, or a medical opinion [will not be used] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. Furthermore, even if a plaintiff is diagnosed with insomnia, there may be insufficient existence to establish the need for functional limitations to account for it. Raymond L. v. Kijakazi, No. BPG-21-616, 2022 WL 816926, at *2 (D. Md. Mar. 17, 2022). For example, when the record lacks medical evidence showing why a plaintiff was diagnosed with or treated for insomnia and states a plaintiff's lack of sleep is not due to insomnia, but rather other impairments, an ALJ is not required to create limitations to account for it. Id. However, an ALJ cannot rely upon the lack of objective medical evidence to discredit a plaintiff's subjective complaints about diseases that do not produce such evidence, like fibromyalgia or chronic depression. Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 97 (4th Cir. 2020); Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 361 (4th Cir. 2023). Objective indicators include clinical or laboratory results. Arakas, 983 F.3d at 97. Plaintiffs "are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. at 98.

An ALJ "labor[s] under no requirement to fashion an RFC that exactly matched [the claimant's] testimony or the opinion evidence." Gilmore v. Kijakazi, No. 1:21CV420, 2022 WL 2869047, at *8 (M.D.N.C. Jul. 21, 202), report and recommendation adopted, No. 1:21CV420, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022). Even if an "ALJ's opinion was not as precise as it could or should have been, the ALJ [is] not required to recite her finding in any specific language." Shelton v. Comm'r of Soc. Sec., No. 4:17-cv-00008, 2018 WL 5284213, at *3 (W.D.Va. Jul. 2, 2018).

Here, the ALJ adequately did a function-by-function analysis of Plaintiff's insomnia. To start, the ALJ did consider this impairment in her opinion. (Tr. 19, 21.) The ALJ discussed Plaintiff's report of "feeling weak and tired." (Tr. 19.) The ALJ also considered Plaintiff's hearing testimony, when she reported "she is weak and tired at the end of the day." (Tr. 19.) Finally, the ALJ discussed Plaintiff's report that she stopped her practice as a counselor because of her symptoms, including "severe feelings of weakness and exhaustion[.]" (Tr. 21.) The ALJ explained "many of [Plaintiff's] symptoms and functional limitations have improved." (Tr. 21.) Further, the ALJ explained "[n]otwithstanding [Plaintiff's] report that she decided to stop her practice due to 'severe feelings of weakness and exhaustion,' the treatment records do not support a finding that [her] symptoms and functional limitations warrant disability." (Tr. 22.) While the ALJ's opinion could have been more precise, the ALJ did consider Plaintiff's reports of feeling tired. Further, to the extent Plaintiff attempted to argue the ALJ's failure to use the word "insomnia" constituted a failure to perform a function-by-function analysis, the Court emphasizes she is "not required to recite her finding in any specific language." Shelton, No. 4:17-cv-00008, 2018 WL 5284213, at *3. The ALJ included a narrative discussion, and although she could have been more detailed, she adequately considered Plaintiff's insomnia.

Additionally, Plaintiff does not cite to a diagnosis of insomnia in her brief, and the Court was not able to find one in reviewing the record. Plaintiff's main evidence in support of her insomnia appears to be her testimony at the ALJ hearing. (Tr. 45–47.) The few medical records that do reference Plaintiff's fatigue appear to associate it with her other impairments, like her thyroid disease and heart conditions. (Tr. 266, 324, 514, 526.) So, similar to Raymond L., even if Plaintiff's testimony is enough to support a diagnosis of insomnia, the record suggests it is caused by her other impairments and there is insufficient evidence to create functional limitations. The Court is mindful of the Fourth Circuit's prohibition on relying upon the lack of objective medical evidence to discredit a plaintiff's subjective complaints about diseases that do not produce such evidence. However, the ALJ did discuss and consider Plaintiff's fatigue in her opinion and provided an explanation for her conclusion. The ALJ did not rely upon the lack of a diagnosis or objective medical evidence of insomnia in making her decision.

Here, the ALJ adequately performed a function-by-function analysis of Plaintiff's insomnia. Again, the ALJ could have been more detailed, but she did discuss Plaintiff's feelings of tiredness and exhaustion. As such, the ALJ did not err and sufficiently considered Plaintiff's insomnia.

**C. The ALJ did not misstate Plaintiff's evidence regarding her peripheral edema.**

In her final assignment of error, Plaintiff argues the ALJ misstated the evidence of her peripheral edema. (Doc. No. 8, pp. 10–12.) Plaintiff claims the "record documents ongoing lower extremity edema both in her physical examinations and through her subjective complaints to her healthcare providers." (Id. at 12.) In response, the Commissioner argues the ALJ did not err and did consider the evidence of Plaintiff's edema. (Doc. No. 9, pp. 11–12.) The Commissioner claims "Plaintiff is simply asking the Court to reweigh the evidence[.]" (Id. at 12.)

12

An ALJ's decision not to include an RFC limitation concerning leg elevation for edema does not automatically warrant remand. Gilbert v. Colvin, No. 2:14-981-MGL-MGB, 2015 WL 5009225, at *17 (Aug. 19, 2015). In Gilbert, the plaintiff, who had edema, argued the ALJ erred in not finding she needed to elevate her legs. Id. The plaintiff testified at the ALJ hearing that a Certified Family Nurse Practitioner instructed her to always keep her legs elevated when she was sitting and the medical record noted she had significant edema on a number of occasions. Id. However, the ALJ in Gilbert opined "the record does not show that the claimant's edema is as disabling as she has alleged . . . ." Id. The court found "[s]ubstantial evidence supports the ALJ's conclusion that [the plaintiff's] edema was mild, and the ALJ's failure to include a limitation in the [] RFC concerning leg elevation [did] not warrant remand." Id. (cleaned up).

Limitations related to a plaintiff's edema can be accounted for in regular breaks from work. Bell v. Saul, No. 5:19-cv-00021, 2020 WL 961424, at *5 (E.D.N.C. Jan. 21, 2020). In Bell, the court explained the plaintiff "did not state she needed to elevate her legs at will" and her testimony that she elevates her legs two to three times a week for thirty minutes "could arguably be done during lunch or other break periods, or off-work time . . . ." Id. The court in Bell also noted none of plaintiff's medical providers opined she needed to elevate her legs and treatment records showed no edema, and so it was "unpersuaded" to hold the RFC needed an allowance for leg elevation. Id.

Importantly, when courts review an ALJ's decision, they "do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Johnson, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on [the ALJ]." Craig, 76 F.3d at 589; Hancock, 667 F.3d at 472.

13

Here, the ALJ did not misstate the evidence regarding Plaintiff's peripheral edema. Like Gilbert, the ALJ determined the record does not support Plaintiff's claims. In her opinion, the ALJ explained Plaintiff reports she "gets some swelling in her ankles" and Plaintiff "has ongoing swelling and pain in her ankles which make mobility difficult[.]" (Tr. 20.) The ALJ also considered a report of ankle swelling and an exam that showed no edema. (Tr. 20.) Nevertheless, the ALJ explained "the record does not document ongoing lower extremity edema or any gait deficits." (Tr. 20.)

Notably, Plaintiff did not testify her medical provider advised her to elevate her legs. At the hearing, the ALJ asked Plaintiff "[h]ow do you typically deal with the swelling and the resulting pain [from your edema]?" (Tr. 48.) Plaintiff answered "by the end of the day, I normally have to prop my legs up to try to relieve some of the swelling . . . ." (Tr. 48.) Plaintiff also testified she reduces her salt intake "and that keeps [the swelling] pretty constant . . . ." (Tr. 48–49.) Plaintiff claims she "emphasized during her testimony that she had to elevate her legs to reduce the swelling." (Doc. No. 8, p. 12.) Similar to Bell, Plaintiff did not state she needed to elevate her legs at will, but that she does so at the end of the day, and therefore could elevate her legs as needed during breaks and off-work time. The ALJ did include "one to two additional five minute rest breaks" in her RFC. (Tr. 18.)

Plaintiff appears to be attempting to rephrase her hearing testimony because she disagrees with the ALJ's determination. The Court is not tasked with reweighing the evidence or substituting its judgment for the ALJ. The ALJ discussed Plaintiff's edema and explained why she does not believe it requires a limitation. Therefore, the ALJ sufficiently considered Plaintiff's edema and did not err.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. No. 7), is **DENIED**; the Commissioner's Motion for Summary Judgment, (Doc. No. 9), is **GRANTED**; and the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

Signed: September 5, 2024

Frank D. Whitney
United States District Judge